UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JULIE Y.,[1]

                     Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

**Decision and Order**

19-CV-1362-HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, cited hereafter as "Tr."), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 9, 13. Plaintiff Julie Y. challenges the final decision of the Commissioner of Social Security (the "Commissioner") that she is not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on the papers under Rule 78(b).

## II.    LEGAL STANDARD

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial

---

[1] Under this District's Standing Order, any non-government party must be identified and referenced solely by first name and last initial.

evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing the Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v.*

*Callahan*, 139 F.3d 606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion.  *Id.*  "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983);

3

*Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, then the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to determine the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  The ALJ must then determine the individual's ability to return to past relevant work given the RFC.  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

### III.  DISCUSSION

Plaintiff argues, among other things, that the ALJ did not provide a sufficient rationale

4

to support the limitation related to Plaintiff's Crohn's disease—namely, that she would only be off-task 10% of the workday and miss work one day per month. *See* Dkt. No. 9-1 at 14. Because the Court agrees, remand for further proceedings is appropriate.

There is no dispute that Plaintiff has Crohn's disease. "People with Crohn's disease have ongoing (chronic) inflammation of the gastrointestinal tract." *Kiely v. Astrue*, No. 10-CV-1079, 2011 WL 5078772, at *3 n.3 (D. Conn. Sept. 2, 2011). "The main symptoms of Crohn's Disease are crampy abdominal pain, fever, fatigue, loss of appetite, pain with passing stool, persistent watery diarrhea, and unintentional weight loss." *Id.* At the hearing, Plaintiff testified that the disease causes problems with her bowels: she requires approximately ten, unscheduled restroom breaks throughout the day. Tr. 43. Plaintiff usually spends "a couple of hours" in the bathroom in the morning, and other restroom trips take "anywhere from 20 minutes to 40 minutes" each. Tr. 44. The frequency between restroom trips can range from a few minutes to a "couple of hours." Tr. 44, 49. Plaintiff receives infusions to help with the abdominal pain associated with the disease, but they do not reduce the "frequent bathroom usage." Tr. 46. The bowel problems also make sitting and walking uncomfortable; Plaintiff relieves the discomfort by alternating between sitting and standing. Tr. 46-47.

If Plaintiff's claims are true, the disease would likely preclude Plaintiff from obtaining competitive employment. The vocational expert testified that an employer would not tolerate off-task time amounting to greater than 10% of an eight-hour workday—*i.e.*, 48 minutes. Tr. 56. In Plaintiff's case, even just three restroom breaks would extend beyond the off-task limit

5

(3 breaks at 20 minutes each equals 60 minutes).

In his decision, the ALJ determined that Plaintiff's Crohn's disease constitutes a severe impairment. Tr. 18. The ALJ concluded that, for purposes of the RFC, Plaintiff could perform a reduced range of sedentary work. Tr. 21. As is relevant here, he found that Plaintiff would be "absent one day a month and off task for 10 percent of a day due to alternating between sitting and standing and using the bathroom." Tr. 22.

Plaintiff asserts that the ALJ's decision lacks any discussion "of how the ALJ came to the magic number[] of . . . 10% off task during the day." ECF No. 9-1 at 14. Plaintiff's argument is well taken.

"Although an RFC determination is an issue reserved for the Commissioner, the ALJ is a layperson, and as such is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Anderson v. Comm'r of Soc. Sec.*, No. 19-CV-464, 2020 WL 5593799, at *3 (W.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). "In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does not extend beyond that of an ordinary layperson. While an ALJ may render common sense judgments about functional capacity, []he must avoid the temptation to play doctor." *Duncan v. Comm'r of Soc. Sec.*, No. 18-CV-369, 2020 WL 1131219, at *2 (W.D.N.Y. Mar. 9, 2020) (internal quotation marks and brackets omitted).

Because an ALJ's authority to make inferences from the record is not unbounded, and because a reviewing court must "ensure that the ALJ employed the proper standards and

rendered a decision supported by substantial evidence," it is critical that the ALJ's rationale for the RFC determination be "sufficiently discernible." *McGirr v. Comm'r of Soc. Sec.*, No. 19-CV-1004, 2020 WL 3467416, at *2 (W.D.N.Y. June 25, 2020). "If the ALJ does not explicitly articulate, or a reviewing court cannot otherwise discern, how the ALJ arrived at particular restrictions, it raises the specter that the ALJ either cherry-picked the evidence to justify a pre-ordained conclusion, or interpreted the medical evidence based on her own lay judgment—both of which constitute error." *Id.*

In this case, the ALJ presented no explicit rationale to justify his finding concerning Plaintiff's daily off-task time, and the Court cannot otherwise glean an implicit rationale from the evidence that the ALJ cited.

First, the ALJ cites a November 2016 consultative opinion issued by Nikita Dave, M.D. At the consultative examination, Plaintiff stated that she awakes every morning with the urge to "suddenly move her bowels because of diarrhea," and that it "takes a prolonged period of time to evacuate the bowels." Tr. 246. Dr. Dave opined that Plaintiff had "[m]ild to moderate limitations for maintaining physical activity through the day as she would require frequent rest breaks and intervals to sit down." Tr. 249. The ALJ did not explain, and the Court cannot discern, the significance of this evidence as it relates to the off-task limitation. *See* Tr. 22-23.

Second, the ALJ cites a September 2017 treatment note from a gastroenterologist. *See* Tr. 23, 255-258. At that visit, Plaintiff reported that the symptoms associated with her Crohn's disease are "well controlled" with her medication regimen, and she "denie[d] any acute

7

complaints." She reported that a "couple of times per year" she had stinging pains in her abdomen, and "4 to 5 times per month" she had a "vague type of cramping" that resulted in "fecal urgency[] as well as bloating." *Id.* Plaintiff indicated that the cramping symptoms could be relieved with medication. *Id.* Plaintiff also described her bowel habits as "irregular." *Id.*

Plaintiff's description of her symptoms at the gastroenterology visit is arguably inconsistent with the more severe symptoms she described at the hearing. But, though this note may have given the ALJ a basis to look skeptically at Plaintiff's claimed symptoms, the Court fails to see how it could have led the ALJ to affirmatively find that Plaintiff would be absent once per month and off task 10% of the day—nothing in the note approaches that level of specificity.

Third, the ALJ cites a primary-care treatment note dated March 27, 2018. Tr. 23. The note indicates that at that time, Plaintiff was taking anti-diarrheal medication "as needed." Tr. 23, 313. The ALJ does not articulate what inference he draws from that fact. The ALJ may have believed this was inconsistent with the claimed frequency: if Plaintiff were truly visiting the restroom ten times per day, she would likely need to be using anti-diarrheal medication consistently, not "as needed." Regardless, the Court can only speculate as to the inference the ALJ drew from this evidence. Furthermore, the note contains no specific discussion of the frequency of Plaintiff's restroom visits, and so it is unclear how this evidence supported the ALJ's off-task finding.

Fourth, there are three treatment notes from the gastroenterology practice dated June,

July, and August 2018. *See* Tr. 23-24. The June 2018 note indicates that Plaintiff had not visited the gastroenterologist since September 2017 but was now experiencing a flare-up in her symptoms. Tr. 321. Plaintiff was using the restroom between 10-15 times per day. *Id.* Testing revealed that Plaintiff was suffering from a C. Difficile infection. Tr. 339. Plaintiff received antibiotics, and in July 2018, she indicated that her restroom visits had decreased to 4-5 times per day. Tr. 339. That reported frequency remained the same at the August 2018 visit. Tr. 335.

Again, the ALJ does not specify what inferences he drew from this evidence. It may be that the ALJ believed Plaintiff's estimate—that she used the restroom ten times per day—occurred only rarely, when she "flared up," and that medication successfully treated the issue. *See* Tr. 23-24. Still, even if the ALJ accepted the lower estimate of 4-5 visits per day, at twenty minutes per visit, that would amount to off-task time of at least 80 minutes per workday, not 48 minutes. It thus remains unclear how the ALJ did the math to reach off-task time of 48 minutes per workday.

Finally, the ALJ did not give controlling weight to either of the two relevant medical opinions in the record. As to Dr. Dave's consultative opinion, the ALJ purported to give portions of it "some weight" and others "little weight." Tr. 25. Which portions the ALJ found persuasive are not clear from the decision, however. To the extent the ALJ adopted Dr. Dave's conclusion that Plaintiff requires "frequent rest breaks," there is no discussion that clarifies how the ALJ interpreted that phrase to reach his off-task limitation. *Id.* Social Security regulations

9

normally define "frequent" to mean "between one third and two thirds of an eight-hour workday," which would equal more than two hours of breaks per workday, not 48 minutes. *Bryant v. Comm'r of Soc. Sec.*, No. 19-CV-6403, 2020 WL 5810016, at *6 (W.D.N.Y. Sept. 30, 2020).

The ALJ gave little weight to the opinion of Mary J. Ciechoski, a treating nurse practitioner. Tr. 25. Ciechoski opined that Plaintiff suffered from chronic diarrhea and would require frequent, unscheduled restroom breaks throughout the workday. Tr. 331-33. Each visit would last approximately ten minutes. Tr. 333. She also opined that Plaintiff would be off task 20% of the workday. Tr. 333.

As the preceding discussion makes clear, the medical records that the ALJ cited may very well undercut Plaintiff's claim concerning the frequency of her restroom visits. But, even if Plaintiff's claim may be doubted, the ALJ did not explain how the medical evidence supports his affirmative finding that Plaintiff would be indisposed for no more than 48 minutes each workday. The ALJ might have employed some permissible chain of reasoning to reach that amount, but it is not apparent in the decision itself.

Even if the Court were able to arrange the above evidence in a way that yielded the figure of 10% off-task time, it is not the Court's responsibility to articulate the ALJ's logic. To the contrary, "[n]either this Court nor the Commissioner on appeal may create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *McGirr*, 2020 WL 3467416, at *4

(internal quotation marks omitted). The ALJ's rationale is not sufficiently discernible in the decision itself, and remand is therefore warranted. *See Runfola v. Comm'r of Soc. Sec.*, No. 19-CV-868, 2020 WL 6566303, at *5 (W.D.N.Y. Nov. 9, 2020) ("Remand is required because the ALJ failed to provide sufficient analysis connecting the evidence in the record . . . to his RFC determination.").

**IV.   CONCLUSION**

For the reasons discussed herein, the Court denies the Commissioner's motion (Dkt. No. 13) and grants Plaintiff's cross-motion (Dkt. No. 9). The Court vacates the Commissioner's final decision and remands the matter for further proceedings consistent with this Decision and Order. The Clerk of Court is directed to close the case.

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: February 8, 2021